IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GEOFFREY WILLIAM WATTIKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:22-cv-940-B-BN |
| | § | |
| ELSENBARY ENTERPRISES, INC., | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Geoffrey William Wattiker alleges that, in October 2021, he contracted with Defendant Elsenbary Enterprises, Inc. (Elsenbary), "a contract carrier specializing in the transport of motor vehicles in intrastate and interstate commerce," and its owners and operators, Defendants Taghrid Ragab and Medo Hassan (collectively Defendants), to transport a 1965 Alfa Romero from Cologne, Minnesota to Forney, Texas. Dkt. No. 3. According to Wattiker, later that month, Defendants picked up the car "in Minnesota in good condition and with no exceptions," but, when it was delivered to Wattiker in Texas, the car "had suffered severe damage resulting in the rear portion of [it] being crushed." *Id.*

Wattiker alleges that he notified Defendants of the damage and demanded payment, and, because Defendants failed to pay him, Wattiker filed this lawsuit *pro se*, alleging a claim under 49 U.S.C. § 14706, the Carmack Amendment, and claims for breach of contract and negligence. *See id.*

After the Court dismissed two other defendants and Wattiker requested and

obtained an entry of default against Defendants, *see* Dkt. Nos. 11-14, 16-20, the Court referred this lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b), *see* Dkt. No. 21. Wattiker then moved for default judgment. *See* Dkt. Nos. 22, 23. And the undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should grant default judgment as to only the Carmack Amendment claim against Defendants and award Wattiker $17,500.00 for actual damages.

## Legal Standards

When a defendant has "failed to plead or otherwise defend" an action, the Court may enter a default judgment if the plaintiff establishes the following prerequisites: (1) the defendant was served with the summons and complaint and default was entered; (2) the defendant is not "a minor or incompetent person"; and (3) the defendant is not in the military. FED R. CIV. P. 55(b)(2); *see also* 50 U.S.C. § 3931(a), (b) (providing "[p]rotection [for] servicemembers against default judgments").

In this circuit, there is a required three-step procedure to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk of the Court; and (3) entry of default judgment by the district court. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (defining "the terms regarding defaults"). "A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *Id.*

Even though the United States Court of Appeals for the Fifth Circuit favors resolving cases on their merits rather than granting default judgments, this

preference is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial court's discretion." *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999). In consideration of these competing preferences, the Court takes a two-part approach in determining whether to grant entry of default judgment. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (requiring a "sufficient basis in the pleadings for the judgment entered"); *see also Lindsey v. Price Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (stating "relevant factors" in determining whether default judgment is appropriate).

First, the Court considers the following six non-exhaustive factors to decide whether default judgment is appropriate: (1) "whether the default was caused by a good faith mistake or excusable neglect"; (2) "whether there has been substantial prejudice"; (3) "the harshness of a default judgment"; (4) whether there are "material issues of fact"; (5) "whether the grounds for a default judgment are clearly established"; and (6) whether the Court would be "obliged to set aside the default on the defendant's motion." *Lindsey*, 161 F.3d at 893. Default judgment is appropriate when a defendant fails to answer or otherwise respond to the pleadings or court orders. *See McGrady v. D'Andrea Elec., Inc.*, 434 F.2d 1000, 1001 (5th Cir. 1970) (upholding a default judgment due to a defendant's "delay and failure to comply with court rules").

Second, the Court must assess the merits of the plaintiff's claims and find a "sufficient basis in the pleadings for the judgment entered*." Nishimatsu*, 515 F.2d at

1206; *see also Escalante v. Lidge*, 34 F.4th 486, 493 (5th Cir. 2022) ("[E]ven if a defendant defaults, a court may still deny default judgment if the plaintiff has failed to state a claim on which relief can be granted." (citing *Lewis v. Lynn*, 236 F.3d 766, 767-68 (5th Cir. 2001) (per curiam))).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must "contain a short and plain statement of the claim showing the pleader is entitled to relief." FED R. CIV. P. 8(a)(2). This requirement "give[s] the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). By defaulting, the defendant is deemed to admit "the plaintiff's well-pleaded allegations of fact" and is not deemed to "admit allegations that are not well-pleaded or to admit conclusions of law." *Nishimatsu*, 515 F.2d at 1206. The factual allegations, assumed to be true, need only "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Detailed allegations are not required, but "the pleading must present more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A default judgment … establishes the defendant's liability. But it does not establish the amount of damages." *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). "[I]n the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing … [except] where the amount claimed is a liquidated sum or one capable of mathematical calculation." *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings

and supporting documents alone." *Id.* at 311. Thus, affidavits submitted to support a claim for mathematically calculable damages "must be sufficiently detailed to establish necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

Two other caveats also apply. "[A] 'party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default.' In fact, '[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.'" *Lewis*, 236 F.3d at 767 (citations omitted). And, before it may enter default judgment, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Savings & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) (federal courts have independent duty to examine their own subject matter jurisdiction).

## Analysis

**I. The Court has jurisdiction over the subject matter and the parties.**

Deciding the motion for default judgment "begin[s], as [it] must, by examining [the Court's] jurisdiction." *Hammerschmidt v. Garland*, 54 F.4th 282, 287 (5th Cir. 2022) (citation omitted).

Wattiker asserts that the Court has jurisdiction under both 28 U.S.C. § 1331, based on the Carmack Amendment, and 28 U.S.C. § 1332.

But the Court does not have jurisdiction under Section 1332, even if there is complete diversity, because Wattiker has not pled that the amount in controversy

exceeds $75,000. *See* 28 U.S.C. § 1332(b); Dkt. No. 3 at 7 (pleading actual damages of $17,500); Dkt. No. 22-1 (declaration in support of motion for default judgment), ¶ 7 ("The claim of the plaintiff is for damage to a 1965 Alfa Romeo GT which was damaged by the Defendants while they were transporting the Vehicle in interstate commerce from Cologne, Minnesota to Forney, Mesquite Texas. The cost to repair the damage is $17,500.00."); *see also Kennard v. Indianapolis Life Ins. Co.*, 420 F. Supp. 2d 601, 607 (N.D. Tex. 2006) ("The sum claimed by a plaintiff controls the court's 'amount in controversy' analysis, unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount. In general, the court will look to the plaintiff's complaint regarding the pleaded amount in controversy, but the court is also free to look to other information before the court, including any discovery material and affidavits." (collecting authority)).

Turning to Section 1331, "[f]ederal-question jurisdiction exists for Carmack Amendment claims 'only if the matter in controversy for each receipt or bill of lading exceeds $10,000.00, exclusive of interest and costs.'" *Kimmel v. Bekins Moving & Storage Co.*, 210 F. Supp. 2d 850, 852 (S.D. Tex. 2002) (quoting 28 U.S.C. § 1337).

Although Wattiker does not explicitly plead the existence of a receipt or bill of lading, *see* Dkt. No. 3, "jurisdiction does not depend on the amount on the face of the receipt or bill of lading; if a shipment generated a controversy exceeding $10,000, there is nothing in Section 1337(a) which would prevent bringing the claim in federal court," *Pillsbury Co. v. Atchison, Topeka & Santa Fe Ry. Co.*, 548 F. Supp. 28, 30 (D. Kan. 1982) (further observing "that the bill of lading language serves to identify and

delineate the extent of the shipment subject to the controversy" and that, "[i]n the rare instance where no bill of lading is issued (and the wise shipper would do well to condition consignment upon its issuance)," "a federal court could substitute the words 'single shipment' for 'receipt or bill of lading' without doing violence to the congressional intent"); *see also* 49 U.S.C. § 14706(a)(1) ("Failure to issue a receipt or bill of lading does not affect the liability of a carrier."); *Fireman's Fund Ins. Co. v. Interstate Consolidation Serv., Inc.*, Civ. A. No. 86-2909, 1987 WL 14081, at *1 (D.D.C. July 10, 1987) (finding that the court did not lack subject matter jurisdiction over a particular shipment not because no bill of lading was produced but because the court deduced that "the value" of that shipment "is under the $10,000 jurisdictional requirement"). *Cf. Apparel Prod. Servs., Inc. v. Ind. Transp.*, Civ. A. Nos. L-08-26, L-08-62, 2009 WL 890275, at *3 (S.D. Tex. Mar. 28, 2009) ("While the Carmack Amendment requires a carrier to issue a receipt or bill of lading, it also provides that failure to do so does not affect the carrier's liability. § 14706(a)(1). On the surface, those provisions seem to be internally inconsistent. Nevertheless, … the specific requirement in § 14706(a)(1)(C) of a 'through bill of lading' necessarily requires a written instrument. There can be no such thing as an oral through bill of lading. Therefore, whether or not a written bill of lading is always needed under Carmack, it is clearly needed for Carmack to apply to loss or damage in an adjacent foreign country." (citation omitted)).

Because Wattiker pleads that a single shipment from Minnesota to Texas generated a controversy that exceeds $10,000, the Court has subject matter

jurisdiction under Section 1331.

Wattiker has also pled allegations that, "if established," "would be sufficient … to make a *prima facie* showing" that the Court has personal jurisdiction over Defendants. *Sys. Pipe & Supply*, 242 F.3d at 325. That Defendants allegedly delivered the Alfa Romero to Texas provides the "connection between the suit and the forum" demanded for specific jurisdiction. *Zoch v. Magna Seating (Germany) GmbH*, 810 F. App'x 285, 288 (5th Cir. 2020) (citing *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F.*, 582 U.S. 255, 262 (2017)); *see, e.g.*, *Lansky v. Mekenye*, No. 4:12-cv-872-Y, 2013 WL 12129253, at *2 (N.D. Tex. June 25, 2013) ("[T]he Court is persuaded that Plaintiffs have established a *prima-facie* case that the Court has specific jurisdiction over American Group in this case. As Plaintiffs point out, American Group contracted with a Texas company to ship the ammunition by motor carrier, arranged for the shipment of the ammunition through Texas, and the ammunition was confiscated at the Texas border. In this regard, American Group purposefully directed its activities toward Texas. Furthermore, Plaintiffs' claims arise out of these contacts: as Plaintiffs are suing American Group for reaching into Texas and hiring Demco in the first instance, and then for failing to ensure the safe shipment of the ammunition through Texas and into Arizona.").

## II.     The procedural requirements for default judgment have been met.

Defendants were served a copy of the summons and the complaint on June 17, 2022. *See* Dkt. No. 6. None responded.

The Clerk entered default on September 29, 2022. *See* Dkt. No. 20.

Elsenbary is not a natural person, so it cannot be a minor, incompetent person,

or in military service.

And Wattiker has provided evidence that neither Ragab nor Hassan is a minor, incompetent person, or in active military service. *See* Dkt. No. 22-1, ¶¶ 5, 6.

### III. Only Wattiker's Carmack Amendment claim supports default judgment.

"The Carmack Amendment states in relevant part: 'a carrier that delivers property and is providing transportation or service subject to the Interstate Commerce Commission is liable to the person entitled to recover under the receipt of bill of lading. The liability imposed is for the actual loss or injury to the property.'" *Von Der Ahe v. 1-800-Pack-Rat, LLC*, 597 F. Supp. 3d 1051, 1056 (N.D. Tex. 2022) (cleaned up; quoting 49 U.S.C. § 14706).

> To establish a prima facie case of negligence for loss or damage to goods as a result of interstate transportation by a common carrier, thus implicating the Carmack Amendment, the shipper must demonstrate: (1) the goods were delivered to the shipper in good condition, (2) receipt by the consignee of less goods or damaged goods, and (3) the amount of damages. [And, o]nce a prima facie case has been established by the shipper, 'there is a rebuttable presumption of negligence on the part of the carrier.'"

*Id.* (citations omitted).

Wattiker has pled each of these elements consistent with the requirements of Rule 8(a)(2). So, by defaulting, Defendants have deemed to admit these well-pled allegations, establishing a violation of the Carmack Amendment.

But Wattiker is not entitled to default judgment on either the breach of contract claim or the negligence claim because both are "preempted by the Carmack Amendment because each claim arises from or is related to the interstate shipment of goods." *Von Der Ahe*, 597 F. Supp. 3d at 1058 (citing *Moffit v. Bekins Van Lines Co.*,

818 F. Supp. 2d 178, 180 (N.D. Tex. 1993)).

> Congress passed the Carmack Amendment to the Interstate Commerce Act intending that it "provide the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier." The Carmack Amendment "supersedes all state laws as to the rights and liabilities and exemptions created by" covered transactions. Furthermore, "in actions seeking damages for loss of property shipped in interstate commerce by a common carrier ... the Carmack Amendment is the shipper's sole remedy." "The Carmack Amendment preempts any common law claim that" would increase carrier liability, "unless the shipper alleges injuries separate and apart from those resulting directly from the loss of shipped property." The Fifth Circuit has recognized that the broad reach of the Carmack Amendment:
>> preempt[s] all state law claims including claims for 1) the tort of outrage, 2) intentional and negligent infliction of emotional distress, 3) breach of contract, 4) breach of implied warranty, 5) breach of express warranty, 6) violation of Texas Deceptive Trade Practices Act, 7) slander, 8) misrepresentation, 9) fraud, 10) negligence and gross negligence, and 11) violation of the common carrier's statutory duties as common carrier under state law.
>
> Claims for attorneys' fees have also been deemed to be preempted by the Carmack Amendment.

*Id.* at 1057-58 (citations omitted).

## IV. Consideration of other factors supports default judgment on the Carmack Amendment claim.

Default judgment is a harsh remedy, but Defendants' failure to answer Wattiker's complaint supports default judgment on his Carmack Amendment claim.

There has not been substantial prejudice against Defendants.

There are clearly established grounds for default: Defendants failed to answer Wattiker's complaint. There is no indication that Defendants' default was caused by good faith mistake or excusable neglect. And so the court would not feel obligated to set aside a default on Defendants' motion (should one be filed). *See Lindsey*, 161 F.3d

at 893.

## V.     The Court should award Wattiker damages.

Wattiker alleges "actual damages … in the amount of $17,500.00," Dkt. No. 3 at 7, for the damage to the Alfa Romero caused by Defendants, an allegation that the Court accepts as true. Because "[t]he damages set forth can be computed with certainty by reference to the pleadings," "the Court need not conduct a hearing to enter a default judgment and determine the amount of damages under Rule 55(b)(2)." *Crown Distrib. LLC v. Peacefull Choice Distrib. LLC*, No. 3:20-cv-3404-K, 2023 WL 1997927, at *9 (N.D. Tex. Jan. 27, 2023), *rec. accepted*, 2023 WL 1997785 (N.D. Tex. Feb. 14, 2023).

## Recommendation

The Court should grant default judgment as to only Plaintiff Geoffrey William Wattiker's Carmack Amendment claim against Defendants Elsenbary Enterprises, Inc., Taghrid Ragab, and Medo Hassan and award Wattiker $17,500.00 for actual damages.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by

reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 19, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE